IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 27 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

JESSICA RICARD                                                                  PLAINTIFF

VS.                                                         CAUSE NO. 1:23cv21HSO-BWR

CITY OF WAVELAND, MISSISSIPPI;
OFFICER JOHN NELSON individually and
in his official capacity;
OFFICER PATRICK CROWE individually and
in his official capacity; and
JOHN and JANE DOES 1-10                                                      DEFENDANTS

**COMPLAINT**
**(Jury Trial Requested)**

COMES NOW the Plaintiff, Jessica Ricard, by and through the undersigned counsel, and files this Complaint against the aforementioned Defendants, and alleges as follows:

**PARTIES**

1. Jessica Ricard, Plaintiff herein, is an adult resident citizen of the State of Mississippi.

2. Defendant, City of Waveland, is a political subdivision of the State of Mississippi and is the entity responsible for the oversight and funding of the Waveland Police Department. Defendant City of Waveland may be served through its mayor or municipal clerk, or by any other lawfully proscribed means of service of process.

3. Defendant Officer John Nelson is, upon information and belief, an adult resident citizen of Hancock County, Mississippi and may be personally served wherever he may be found.

4.      Defendant Officer Patrick Crowe is a upon information and belief, an adult resident citizen of Hancock County, Mississippi and may be personally served wherever he may be found.

## JURISDICTION AND VENUE

5.      The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that all Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to this claim occurred in this district.

## FACTS

7.      At all times described herein, Jessica Ricard was on property in which she enjoyed a leasehold right to quiet enjoyment. Specifically, she was at her family painting business, Ricard's Painting, located at 314 Highway 90, Waveland, Mississippi.

8.      Further, Defendants Nelson and Crowe were at all times described herein acting under color of state law as City of Waveland police officers.

9.      On January 31, 2020, Defendants Officer Nelson and Officer Crowe responded to Ricard's Painting in reference to a 911 emergency call. A complainant named Larry Bruffy stated that a black male wearing a gray hoodie had brandished a firearm and that he needed to file a report.

10.     Upon arrival Officer Nelson and Officer Crowe saw five citizens standing near the Ricard family's white 2014 Chevrolet Silverado in the parking area of Ricard's Painting. One of these individuals was Jessica's son Xavier, who was wearing a grey hoodie. Jessica was one of the other citizens.

11. Defendants Crowe and Nelson approached all five citizens at gunpoint and ordered each of them to show their hands and walk towards the police with their hands in the air.

12. On information and belief, Nelson's bodycam was not recording.

13. Crowe and Nelson then ordered all five citizens to sit on the ground.

14. Everyone, including Jessica, complied.

15. Without cause, Crowe snatched Xavier off of the ground and threw him onto the hood of a nearby car. Crowe searched Xavier and found no firearm.

16. During this time, Jessica was recording a series of videos with her phone.

17. At one point, Nelson disappeared from Jessica's view. Jessica began to express her concern and disfavor at the arrest and detention of her son. Jessica also expressed concern and disfavor over her belief that Officer Nelson was searching her Silverado and purse on her leased property without her consent.

18. Next, Officer Crowe disappeared from Jessica's view.

19. Fearing for the safety of her son and her property, Jessica stood up to attempt to film the conduct of Crowe and Nelson.

20. When Crowe saw Jessica standing, he ordered her to sit back down.

21. Jessica complied.

22. Officer Nelson returned to Jessica's view and told her to stand up stating that she was under arrest for disorderly conduct and failure to comply.

23. Jessica complied.

24. When Jessica stood up, she was not fleeing, nor resisting arrest, nor acting in a disorderly fashion. In fact, she was lawfully and peaceably complying with orders from Defendants Nelson and Crowe. Nelson then grabbed her by the arm, and both Nelson and Crowe

threw Jessica to the ground and pinned her down. Grabbing her, throwing her to the ground, and pinning her down was excessive, not necessary, and an objectively unreasonable use of force. It was during this exercise of excessive force that Nelson and Crowe caused serious injuries to Jessica's right knee (including a ruptured anterior cruciate ligament and a torn meniscus) and other injuries, including extensive emotional distress, all in violation of her civil rights.

25. In addition to the above, Jessica was handcuffed and subsequently had her head forced into the concrete and nearby mud. Further, she was searched by male officers without a female officer present. These actions also constitute excessive force.

26. Unfortunately, this is not the first time Defendant John Nelson has lost his temper and used excessive force against a citizen. In 2016, while acting in his capacity as a police officer for Bay St. Louis Police Department, Defendant Nelson choked a hospital patient in response to a derogatory remark concerning Nelson's character. The events surrounding Nelson's attack of the hospital patient were captured on video, including:

    a. Nelson turning off his body camera just prior to the attack,

    b. Nelson closing a curtain so that hospital staff could not see the attack, and

    c. Nelson high-fiving fellow Bay St. Louis Police Department officers who stood guard to allow the attack.

27. This attack led to the filing of a lawsuit against Nelson, the City of Bay St. Louis, and others in this very Court and coverage by local television station WLOX less than 2 years prior to Nelson's assault of Jessica.

28. The previous conduct by Nelson was absolutely no secret. It occurred in the neighboring city of Bay St. Louis, was the subject of a federal court case than two years prior to Jessica being attacked, and was covered by local television news.

29. Despite this, Waveland hired him anyway.

30. Furthermore, this is not the first time that officers with the Waveland Police Department have been accused of excessive use of force in violation of the Fourth Amendment. The City of Waveland has been sued at least 9 times over approximately the past decade for violating citizens' Fourth Amendment rights via the excessive use of force.

31. By hiring, retaining, and failing to correct the behavior of Nelson and other officers who use excessive force, the City of Waveland adopted an official policy or custom of condoning the excessive use of force. Further, the policymakers of the City of Waveland had actual or constructive knowledge of that policy for the reasons listed hereinabove. Further, that official policy or custom was the moving force behind the violation of Jessica's Fourth Amendment right to be free from the excessive use of force. In sum, the City of Waveland's policymakers knew good and well who they were hiring in Defendant Nelson, and they cared not. That lack of care was tacit approval and condonation of the excessive use of force, and made Nelson believe that he was free to use excessive force on citizens as he pleased.

32. Further, on information and belief, the City of Waveland has also adopted a policy or custom of allowing officers to turn off, fail to turn on, or fail to even wear body cameras. The sole purpose for this policy of allowing officers to avoid recording their activities is to prevent the recording of civil rights violations like the ones in this case. This policy or custom is also known, actually or constructively, to the City of Waveland, and through this policy or custom the City has given tacit approval to officers to violate citizens' Fourth Amendment rights against excessive force. This policy or custom is therefore also a moving force behind the violation of Jessica's Fourth Amendment right to be free from the excessive use of force. Indeed, Defendants Crowe and Nelson were so afraid of their actions being captured on

camera that they acted in accordance with this policy or custom of stopping the recording of police activities by knocking Jessica's phone from her hand, then picking it up and stopping the recording. In sum, Nelson and Crowe knew the City of Waveland would not punish them for failing to record the interaction, and that knowledge was a moving force behind their decision to violate Jessica's civil rights and work to cover up those violations.

## COUNT I
### Violations of Plaintiff's Fourth Amendment Rights Against Excessive Force, Pursuant to 42 U.S.C. § 1983

33. As to Count I, the Plaintiff pleads as follows:

34. All preceding paragraphs are re-alleged and incorporated herein.

35. On or about January 31, 2020, Defendants Nelson and Crowe, under color of state law as City of Waveland police officers, subjected Jessica Ricard to, or caused Jessica Ricard to be subjected to, the deprivation of her Fourth Amendment right under the United States Constitution to be free from unreasonable seizures of her person and the use of excessive force as set forth hereinabove.

36. Upon information and belief, the officers were deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, promoted, accepted, or permitted by the City of Waveland of using excessive force during the arrests of individuals as set forth hereinabove.

37. Upon information and belief, the officers were also deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, promoted, accepted, or permitted by the City of Waveland, of switching off or removing body-worn video cameras during excessive uses of force and of stopping citizens from recording excessive uses of force as set forth hereinabove.

38. As a direct and proximate result of the violent attack, Jessica Ricard suffered numerous serious injuries as described herein, including, but not limited to, a ruptured anterior cruciate ligament, a torn meniscus, fear for her life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. Jessica endured two knee surgeries as a result of the injuries inflicted upon her by the Defendants. Her past medical care costs exceed fifty thousand dollars, and she will require future care in an amount that cannot be pled with greater specificity.

39. The conduct of the Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Jessica Ricard's rights, thus entitling Jessica to punitive damages.

40. To the extent Jessica prevails in the instant case, she is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

41. Therefore, with respect to Count I, the Plaintiff respectfully asks the Court to award her compensatory damages against all Defendants in an amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, against all Defendants, and for injunctive relief against the City of Waveland barring it from creating, encouraging, promoting, accepting, or permitting a pattern, practice, or custom among City of Waveland police officers of engaging in unlawful patterns and practices as described herein, and for such other legal or equitable relief the Court deems appropriate.

## COUNT II
**Conspiracy to Violate Plaintiff's Fourth Amendment Rights Pursuant to 42 U.S.C. § 1983**

42. As to Count II, the Plaintiff pleads as follows:

43. All preceding paragraphs are re-alleged and incorporated herein.

44. Defendants Nelson and Crowe reached a mutual understanding and conspired with each other to violate Plaintiff's civil rights. In furtherance of this conspiracy, Defendants Nelson and Crowe committed several overt acts including, but not limited to, the following:

   a. They physically tackled, pinned down, and otherwise physically assaulted and battered Jessica Ricard when she was not resisting arrest or fleeing and when such use of force was objectively unreasonable;

   b. They failed to prevent or stop the physical assault and battery of Jessica Ricard;

   c. Defendants Nelson and Crowe purposefully did not wear their body-worn cameras, did not activate them, or turned them off so as to conceal their tackling, pinning, and violent physical assault of Jessica;

   d. Defendants Nelson and Crowe violently knocked Jessica's phone from her hand so as to prevent her from recording their violent assault upon her, and then manually stopped the phone from recording once it lay on the ground;

   e. Defendants Nelson and Crowe created and filed incident reports in which they made knowingly false claims that Jessica resisted arrest (the charge against her was subsequently dismissed);

   f. Defendants Nelson and Crowe created and filed incident reports which deliberately omitted the fact that Jessica suffered serious bodily injuries during her encounter with these officers;

45. As a direct and proximate result of the conspiracy between Defendants Nelson and Crowe, Jessica Ricard was unreasonably seized in violation of her rights under the Fourth Amendment to the United States Constitution, which are protected under 42 U.S.C. § 1983.

46. As a direct and proximate result of the conspiracy and violent attack by Defendants Nelson and Crowe, Jessica Ricard suffered numerous serious injuries as described herein, including, but not limited to, a ruptured anterior cruciate ligament, a torn meniscus, fear for her life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. Jessica endured two knee surgeries as a result of the injuries inflicted upon her by the Defendants. Her past medical care costs exceed fifty thousand dollars, and she will require future care in an amount that cannot be pled with greater specificity.

47. The conduct of Defendants Nelson and Crowe was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Jessica Ricard's rights, thus entitling Jessica to punitive damages.

48. To the extent Jessica prevails in the instant case, she is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

49. Therefore, with respect to Count II, the Plaintiff respectfully asks the Court to award her compensatory damages against Defendants Nelson and Crowe in an amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, against Defendants Nelson and Crowe, and for such other legal or equitable relief the Court deems appropriate.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays that this Honorable Court set this matter for a jury trial at the conclusion of which judgement be entered against all

Defendants for the damages requested in the foregoing Counts.

            Respectfully submitted,

            PLAINTIFF
            JESSICA RICARD

By:   */s/ Edward Gibson, Esq.*
            Edward Gibson, Esquire (MSB# 100640)

            GIBSON LAW PA
            544 Main Street
            Bay St. Louis, Mississippi 39520
            Telephone: (228) 467-4225
            Facsimile: (228) 467-4212


            */s/ J. Matthew Eichelberger*
            J. Matthew Eichelberger (MSB# 101060)

            Eichelberger Law Firm, PLLC
            308 E Pearl St, Ste 201
            Jackson, MS 39201
            Telephone: 601-292-7940
            Facsimile: 601-510-9103